ZINNECKER, Appellant,

v.

ZINNECKER, Appellee.

[Cite as *Zinnecker v. Zinnecker* (1999), 133 Ohio App.3d 378.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA98–09–081.

Decided May 10, 1999.

380

*Eric D. Bender,* for appellant.

*Timothy A. Hickey,* for appellee.

VALEN, Judge.

Plaintiff-appellant, Jean Zinnecker (n.k.a. Ross), appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, denying

her motion to modify parental rights and responsibilities regarding the parties' two minor children.

The parties were divorced on May 25, 1995. In the trial court's amended judgment entry decree of divorce filed June 28, 1995, appellee was designated the residential parent of the two minor children. Appellant was granted visitation rights subject to supervision by members of her family.

On March 6, 1998, appellee filed a notice of intent to relocate the children to Tukwilla, Washington. The move to Washington was the result of appellee receiving a job offer that would provide more income and substantially more job security than his current position. Shortly thereafter, on April 3, 1998, appellant filed a motion for reallocation of parental rights and responsibilities, requesting that she be designated the residential parent and legal custodian of the parties' children.

On August 14, 1998, the trial court held a change of circumstances hearing and received testimony from several witnesses. Appellant's sister, Katherine Ross, testified that appellant placed a high priority on integrating the boys into her extended family. Katherine stated that the children came over to her house almost weekly when they were in appellant's care. Katherine stated that she and her husband took a special interest in the boys because the Rosses had no children of their own. Katherine stated that she often went with the boys to watch their baseball games and other sports and described her relationship with them as "extremely close and affectionate."

Katherine also testified that she has eight siblings, including herself and appellant, seven of whom live within Ohio and six of whom still live in southwestern Ohio. The boys have a total of fifteen cousins on appellant's side of the family, all of whom live in Ohio and interact with the children on a regular basis. In particular, Katherine stated that these boys are particularly close to four of their cousins who are boys close to their age. Katherine stated that more often than not, if the boys were at her house with their mother, their cousins would come over to play with them. Katherine stated that she feared that she would only see the boys once each year if they moved to Washington.

Joseph Ross, appellant's brother, testified that he also saw the boys on a weekly basis because he lives on the same street as Katherine. Joseph testified, like Katherine, that the boys were very close to their cousins and that at times they seemed to be "inseparable."

Appellee testified that he has five brothers and four sisters, and all but one of them live in southwestern Ohio. On his side of the family, there are three cousins around the same age as the parties' children. Appellee also stated that there is no connection in Washington on either side of the family. Appellee

testified that the boys have very solid relationships with their cousins, aunts, and uncles on both sides of the family. The following dialogue occurred during cross-examination of appellee:

"Q: And would you agree that this move to Washington will be a significant event in the boys' lives?

"A: Yes.

" * * *

"Q: It would tear them away from a lot of their roots and family connections here, wouldn't it?

"A: I don't know if I want to call it 'tearing' it away. I'm not planning on tearing anything away. But it is moving them further from it, yes.

"Q: And it's definitely going to impact their time and communication with their various cousins and family here, correct?

"A: For both families, yes."

The trial court's August 26, 1998 decision and entry denied appellant's motion, finding that appellant had "failed to show a change in circumstances of the children or of [appellee] which would warrant a reallocation of parental rights and responsibilities." Appellant timely filed this appeal, raising four assignments of error.

Assignment of Error No. 1:

"The trial court erred to the prejudice of plaintiff–appellant and abused its discretion in finding that a change of circumstances had not occurred which would suffice for a change of custody."

■ In this assignment of error, appellant first argues that the wording of the court's entry is ambiguous and indicates that the court made a determination regarding the children's best interest. At the May 14, 1998 hearing on appellant's motion, the trial court made the following statement:

"[T]his is a change of circumstances hearing. We bifurcate these proceedings on a post-decree motion for re-allocation of parental rights and responsibilities. And we—first of all, we hold a change of circumstances hearing to determine whether or not there's been a change in the circumstances of either the children or the custodial—or residential parent or both that would warrant us going forward. And at some later stage, if we do find that there's a change of circumstances, at some later stage we will determinate [sic] whether or not the new allocation is in the best interest—is necessary to serve the best interest of the children * * *."

Based upon the foregoing statement, we conclude that a best interest determination was not part of this proceeding. It is clear that the trial court's determination related only to whether there had been a change of circumstances within the meaning of R.C. 3109.04(E)(1)(a).

■ Generally, the trial court has broad discretion in custody proceedings. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 416–417, 674 N.E.2d 1159, 1160–1162. The trial court's judgment will not be reversed on appeal absent an abuse of discretion. *Id.* at paragraph one of the syllabus. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

R.C. 3109.04(E)(1)(a) governs the modification of a previous order allocating parental rights and responsibilities and states:

"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

"* * *

"(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

■ Therefore, the trial court may modify parental rights and responsibilities if it finds that (1) there has been a change of circumstances, (2) modification is in the best interest of the children, and (3) any harm likely to result from a change of environment is outweighed by the advantages of the change. R.C. 3109.04(E)(1)(a).

■ The initial determination to be made by the trial court is whether there has been a change of circumstances of the child or the residential parent since the prior court order. *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 414, 3 OBR 479, 481–482, 445 N.E.2d 1153, 1155–1156. This finding should be made prior to weighing the child's best interest. See *Green v. Green* (Mar. 31, 1998), Lake App. No. 96–L–145, unreported, 1998 WL 258434. The purpose of requiring a finding of a change in circumstances is to prevent a constant relitigation of issues that have already been determined by the trial court. *Clyborn v. Clyborn* (1994), 93 Ohio

App.3d 192, 196, 638 N.E.2d 112, 115. Therefore, the modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order. R.C. 3109.04(E)(1)(a).

In *Clontz v. Clontz* (Mar. 9, 1992), Butler App. No. CA91–02–027, unreported, 1992 WL 44979, this court stated, "[i]t is true that a move to another state is not alone a sufficient change of circumstances to allow a court to change custody of the children to an in-state parent." *Id.* at 5, citing *Vincenzo v. Vincenzo* (1982), 2 Ohio App.3d 307, 2 OBR 339, 441 N.E.2d 1139; *Culberson v. Culberson* (1978), 60 Ohio App.2d 304, 14 O.O.3d 265, 397 N.E.2d 1226. "Thus, when a move out of state is the only basis on which a court finds a change of circumstance, such a decision constitutes an abuse of the court's discretion." *Clontz* at 5. However, in *Clontz*, we went on to find no abuse of discretion by the trial court in finding that a change of circumstances had occurred after considering the out-of-state move, coupled with the impact of the move upon the children's welfare. *Id.* Similarly, in *Hunter v. Hunter* (Aug. 10, 1992), Madison App. Nos. CA91–10–031, CA91–11–034, unreported, 1992 WL 193688, this court found that a change of circumstances had occurred after considering the residential parent's intended move from Ohio to South Carolina, coupled with the impact of the move on the child's welfare. *Hunter* at 8–9. Likewise, in *Thieken v. Spoerl* (May 20, 1996), Butler App. No. CA95–11–186, unreported, 1996 WL 263583, we found that a change of circumstances had occurred where an out-of-state move impacted the child's welfare because it removed him from well-established, ongoing relationships with grandparents, uncles, aunts, and cousins.

Several other appellate districts have found a change of circumstances in similar situations. In *Franklin v. Franklin* (Sept. 12, 1984), Montgomery App. No. 8696, unreported, 1984 WL 3850, the Second Appellate District stated:

"Although a proposed move to another state does not in itself constitute sufficient justification for a change of custody, the new engagement and relationship of the custodian with her fiancé, along with her stated intentions to change the child's environment from Dayton where he associates with his grandparents and other relatives, does constitute a sufficient change in circumstances under which modification of custody may be considered." *Franklin* at *2–3. (Citation omitted.)

The Ninth Appellate District has stated, "A court may consider the fact that a relocation of the child would remove him or her from a supportive network of family and friends as a factor in finding that a change of circumstances has occurred after the custodial parent expresses a desire to move to another state." *In re Longwell* (Aug. 30, 1995), Lorain App. No. 94CA006006, unreported, 1995 WL 520058. Similarly, the Eleventh Appellate District stated:

"Although a relocation, by itself, is not sufficient to be considered a change of circumstances, it is certainly a factor in such a determination. In addition, the attendant circumstances, as well as the impact of such a move, can be considered by the court by [*sic*] determining if a change of circumstances has occurred." *Green v. Green* (Mar. 31, 1998), Lake App. No. 96–L–145, unreported, 1998 WL 258434.

■ We find that these cases are consistent with the Ohio Supreme Court's statement in *Davis* that the change must be a "change of substance, not a slight or inconsequential change." *Davis*, 77 Ohio St.3d at 418, 674 N.E.2d at at 1162. A move that has no direct impact on the child amounts to a slight or inconsequential change; a move that directly impacts the child in some demonstrable way constitutes a substantive change. Such a substantive change is sufficient to meet the threshold showing that a change of circumstances has occurred warranting further inquiry to determine whether a change of custody is in the best interest of the child.

■ It is undisputed that these children have well-established, ongoing relationships with their extended family in Ohio and no connection with the state of Washington. Under these circumstances, a move from Ohio to Washington will no doubt impact these children in their ability to continue these relationships. Therefore, we find that a change of circumstances has occurred, and the trial court should not have overruled appellant's motion without first inquiring into the best interest of the children.

■ We note that although R.C. 3109.04(E)(1)(a) requires that the trial court find a change in circumstances before the court modifies custody, such a finding, in and of itself, does not demand a modification. *Pryer v. Pryer* (1984), 20 Ohio App.3d 170, 20 OBR 205, 485 N.E.2d 268, paragraph one of the syllabus. A modification must also be in the best interest of the children and may not be made unless R.C. 3109.04(E)(1)(a)(i), (ii), or (iii) applies. See *id.* During the "change of circumstances" hearing, there was some evidence indicating that a modification in custody may not be in the children's best interest. Though some of the evidence presented at the change of circumstances hearing may appear to be relevant regarding the children's best interest, before a proper best interest determination can be made, both parties must be given a full opportunity to present evidence in that regard, in a *de novo* hearing.

Accordingly, appellant's first assignment of error is sustained. We decline to rule on appellant's remaining assignments of error at this time pursuant to

App.R. 12(A)(1)(c).[1]  The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

POWELL, P.J., concurs.

WALSH, J., dissents.

WALSH, Judge, dissenting.

The majority in this case has correctly defined the phrase "abuse of discretion," which is the standard of our review in this matter.

I am unable to say, however, that the reasoning and conclusion of the trial court (that a change of circumstances has not occurred) is unreasonable, nor is it arbitrary or unconscionable as the standard of review required for a reversal on this basis.

The thrust of the reasoning by the majority appears to be aimed at the circumstances of appellant's family being changed as to their access to the children of the parties, rather than the impact of relocation on said children.

The trial court found that the children will continue to enjoy visitation with their mother and extended families in Ohio if no reallocation of parental rights is made.  It is the father who cooperates on visitation, not the mother.  The mother, on three occasions, failed to return the children to their father following visitation, which failures resulted in a contempt finding against her and the requirement that her visitation be supervised.  There is no reason provided in the record to think that this circumstance has changed.

There is ample evidence to support the judgment in this case and a failure of showing an abuse of discretion by the trial court.  The judgment of the trial court should be affirmed, and therefore I dissent.

---

1.  App.R. 12(A)(1)(c) requires the appellate court to decide each assignment of error "[u]nless an assignment of error is made moot by a ruling on another assignment of error."