[Cite as *Oyedare v. Oyedare*, 2019-Ohio-2794.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| OLUMUYIWA OYEDARE, | : | |
| Appellee, | : | CASE NO. CA2018-11-221 |
| | : | O P I N I O N |
| - vs - | | 7/8/2019 |
| | : | |
| OLUWATOYIN OYEDARE, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DS16050035

Olumuyiwa Oyedare, c/o Holy Family Catholic Church, 30 Agric Road Ajara, P.O. Box 616, Dabagry, Lagos State, Nigeria, pro se

Tibbs Law Office, Jordan A. D'Addario, 1329 East Kemper Road, Suite 4230, Cincinnati, Ohio 45246, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Oluwatoyin Oyedare ("Mother"), appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, denying her motion to

designate her residential parent and sole legal custodian of her two children fathered by appellee, Olumuyiwa Oyedare ("Father"). Mother also appeals the domestic relations court's decision overruling her motion requesting the domestic relations court find Father in contempt for failing to allow her to have media contact with the children. For the reasons outlined below, we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2} Mother and Father, who are both Nigerian citizens, were married in Nigeria in the spring of 2012. Two children were born issue of the marriage, one born in Nigeria on December 25, 2013, and the other born in the United States on July 10, 2015. Although still married, Mother and Father are now separated. Mother currently resides in the United States pending her claim for political asylum. At the time relevant to this appeal, Father was also residing in the United States on a student visa to pursue an advanced degree from a local university.[1] Neither of their two children reside in the United States after having been relocated to Nigeria by Father with approval from the domestic relations court.

{¶ 3} On May 27, 2016, Father filed a complaint with the domestic relations court seeking custody of the children. Father filed his complaint after Mother left the family home with the children without providing any advanced notice to Father. Upon perfecting service on Mother via publication, a domestic relations court magistrate issued an order designating Father as the residential parent and sole legal custodian of the children. The magistrate issued its decision after holding a hearing. Mother did not appear at this hearing, whereas Father appeared at the hearing pro se. The domestic relations court subsequently affirmed and adopted the magistrate's decision in full. Despite being ordered to do so, there is no dispute that Mother kept the children from Father for several months without informing Father of her or the children's whereabouts.

---

1. We note that based on Father's filings with this court that it appears Father may have relocated back to Nigeria.

{¶ 4} On December 1, 2016, Mother moved the domestic relations court to vacate its decision designating Father as the children's residential parent and sole legal custodian. While Mother's motion was pending, the domestic relations court instructed the magistrate to hold a review hearing. Following this review hearing, the magistrate issued a detailed decision that kept in place its order granting Father custody of the children. In so holding, the magistrate noted that Mother had recently been hospitalized due to concerns regarding her mental health and other "erratic behavior."[2] The magistrate also noted that Mother had "willfully concealed" her and the children's whereabouts for several months despite its prior court order mandating Mother to relinquish the children to Father. These issues caused the magistrate to have "serious concerns about Mother, her current circumstances, and willingness to respect court orders." The domestic relations court later affirmed and adopted the magistrate's decision in its entirety.

{¶ 5} On April 19, 2017, Father filed several motions with the domestic relations court. These included a motion requesting permission to relocate to Nigeria with the children. After holding a hearing, the domestic relations court found it was in the children's best interest to grant Father's motion to relocate. In reaching this decision, the domestic relations court found that "[a]s a direct result of his completed studies, Father [was] not permitted to remain in the United States under the terms of his student visa." Mother, however, was permitted to remain in the United States until her application for political asylum was decided. Therefore, because Mother was permitted to remain in the United States for the foreseeable future, the domestic relations court ordered Father to permit Mother "reasonable media contact (Telephone/Text/Facetime/Skype) with the minor children."

---

2. The "erratic behavior" referred to by the magistrate includes Mother being found by police "wandering outdoors in a confused state of mind."

{¶ 6}   On October 13, 2017, Mother moved the domestic relations court for an emergency hearing regarding the children.  Mother also moved the domestic relations court to find Father in contempt for failing to allow her to have media contact with the children.  In support of her motion, Mother alleged Father had taken the children to Nigeria only to return to Ohio without the children.  This, according to Mother, has resulted in her being unaware of where the children were residing or who the children were with due to Father's refusal to communicate with her or allow her media contact with the children.  Therefore, because Father had since returned to Ohio without the children, Mother requested the domestic relations court find Father in contempt and order Father to immediately return the children to Ohio and place the children in her care.

{¶ 7}   On December 5, 2017, a hearing was held before a magistrate.  Following this hearing, the magistrate issued a decision ordering Father to arrange for two of Mother's family members living in Nigeria to have access to the children at their paternal grandparent's residence in Nigeria.  The magistrate also ordered Father to "ensure the children are made available for Mother to have telephone, text, and Facetime with them[.]" The magistrate further ordered that Father ensure that the children's paternal grandparents "cooperate and assist the children in receiving Mother's calls."  The magistrate then scheduled the matter for a status conference to address "whether Mother's relatives were able to visit the children in Nigeria and whether Mother [was] able to communicate with the children via phone, text, or Facetime."

{¶ 8}   On December 28, 2017, Mother moved the domestic relations court to designate her, rather than Father, as the children's residential parent and sole legal custodian.  Mother alternatively requested the domestic relations court order Father to return the children to Ohio and award her with reasonable parenting time with the children.  Upon receiving Mother's motion, the magistrate issued an order requiring Father to bring

the children to Ohio and have the children appear before domestic relations court. The magistrate notified Father that he could be found in direct contempt and immediately jailed if he did not produce the children as instructed. The magistrate also notified Father that his failure to appear at this hearing would result in the issuance of a bench warrant for his arrest.

{¶ 9} On February 2, 2018, Father moved the domestic relations court to set aside the magistrate's order requiring him to produce the children as directed. Father alternatively moved the domestic relations court to stay the magistrate's order. The domestic relations court denied Father's motions. In so holding, the domestic relations court stated:

> This Court has expressed irritation with the conduct of the parties. Both parties are intent on following only select orders and failure to fully comply with orders has frustrated the Court. Perhaps most egregious is the absurd notion that the minor children's absence from this jurisdiction is of no consequence. [T]he married parties requested relief of this court only months ago concerning parenting rights and responsibilities.

{¶ 10} The domestic relations court also stated:

> Since May 2017, [Father] has returned to the United States on a new student visa. [Mother] continues to pursue her application for asylum with the U.S. Department of Homeland Security. Although the parties are living in the United States, the minor children remain in Nigeria but whereabouts unknown to this Court. The parties' minor children and the parental rights and responsibilities concerning them are the subject of the pending motions.

{¶ 11} Despite being explicitly ordered to do so, it is undisputed that Father did not appear before the domestic relations court with the children as directed. A bench warrant was therefore issued for Father's arrest. Father was also found in contempt for his own failure to appear before the domestic relations court. Despite a bench warrant being issued for his arrest, the record indicates Father was never arrested or held to account for his failure to appear before the domestic relations court with the children.

{¶ 12} On March 28, 2018, Mother petitioned this court for a writ of mandamus directing the domestic relations court to issue a decision on her October 13, 2017 motion for contempt and her December 28, 2017 motion for custody. Mother supported her petition by arguing the domestic relations court was "vehemently disregarding" the children's best interests by not yet issuing a decision on her motions. Finding multiple procedural defects with Mother's petition, this court dismissed the petition. Mother then attempted to amend her petition by moving this court to set aside its decision dismissing her original petition. This court denied Mother's motion upon finding "no summons or process" had been issued upon the "proper respondents." This court also found that because Mother's petition was "an original action filed in the court of appeals, this court's decision is not subject to reconsideration pursuant to App.R. 26." *See Oyedare v. Oyedare*, 12th Dist. Butler No. CA2018-03-060 (May 15, 2018) (Judgment Entry of Dismissal).

{¶ 13} On July 10, 2018, the magistrate issued its decision on Mother's then pending motion for contempt and motion for custody. As part of its decision, the magistrate noted that "Mother now demands a decision be issued based on the present state of the record, the magistrate will oblige her accordingly." To that end, after reviewing the record then available, the magistrate found Mother had failed to meet her initial burden to prove a "change of circumstances" had occurred to justify a modification to its earlier order designating Father the children's residential parent and sole legal custodian as required by R.C. 3109.04(E)(1)(a).

{¶ 14} Pursuant to that statute, the domestic relations court shall not modify a prior decree allocating parental rights and responsibilities unless it finds that a change of circumstances has occurred and that any one of the following applies:

> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

- 6 -

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 15} Therefore, in accordance with R.C. 3109.04(E)(1)(a), the domestic relations court "may modify parental rights and responsibilities if it finds that: (1) there has been a change of circumstances, (2) modification is in the best interest of the children, and (3) any harm likely to result from a change of environment is outweighed by the advantages of the change." *Zinnecker v. Zinnecker*, 133 Ohio App.3d 378, 383 (12th Dist.1999). Although R.C. 3109.04 does not provide a definition of the phrase "change in circumstances," it is now well-established that the phrase is intended to denote "'an event, occurrence, or situation which has a material and adverse effect upon a child.'" *Jones v. Wall*, 12th Dist. Warren No. CA2015-10-088, 2016-Ohio-2780, ¶ 17, quoting *Preece v. Stern*, 12th Dist. Madison No. CA2009-09-019, 2010-Ohio-857, ¶ 10.

{¶ 16} In denying Mother's motion for custody, the magistrate found that while Mother may have been able to show "some changes" had occurred, Mother had nevertheless failed to adequately demonstrate how or to what extent those changes may have materially and adversely affected the children so as to constitute a "change of circumstances" under R.C. 3109.04(E)(1)(a). The magistrate also found that, even if the changes Mother had proven constituted a "change of circumstances," Mother had failed to show a change in custody was in children's best interest. Specifically, as the magistrate stated:

> Mother has failed to show what benefits a change in custody would have for the children, what advantages there are in changing the children's existing environment, and how any

purported advantages outweigh the harm caused by the proposed change in custody all of which are requirements under the statute. A change in custody from Father to Mother may be advantageous to Mother but that is not the same as it being in the best interests of the children.

{¶ 17} In reaching this decision, the magistrate found Mother had "overlook[ed] that she has the initial burden of proof in this case." As the magistrate stated:

Mother is the party seeking the change to custody and, thus, she must come forward with evidence the children's current circumstances are adverse to their interests. Father has no burden to prove the appropriateness of the current custodial arrangement – that was a matter previously heard and decided by the court when the current sole custody orders were installed. In the opinion of the magistrate, Mother has failed to carry her burden and, therefore, Mother's motion to change custody is not well taken.

{¶ 18} The magistrate also denied Mother's motion requesting the domestic relations court find Father in contempt for failing to allow her to have media contact with the children. The magistrate denied Mother's motion upon finding it did not have the authority to grant Mother's requested relief; specifically, that the prior order granting Father's motion to relocate to Nigeria with the children be rescinded and replaced with an order that the children be returned to Ohio and placed in her care. Therefore, because the magistrate found it did not have the authority to grant Mother her requested relief, the magistrate ruled that "to the extent Mother's contempt motions seek relief beyond that which is available in a contempt action, the motions are not well taken."

{¶ 19} On July 19, 2018, Mother filed an objection to the magistrate's decision alleging the magistrate's decision was contrary to law and unsupported by the record. After conducting an independent review of the record, the domestic relations court issued a decision overruling Mother's objection. In so holding, the domestic relations court found the magistrate articulated findings of fact and conclusions of law that were consistent with the applicable law and the testimony and evidence presented and available at that time. Mother

now appeals the domestic relations court's decision, raising four assignments of error for review.

{¶ 20} Assignment of Error No. 1:

{¶ 21} THE TRIAL COURT ERRED BY FINDING THAT THERE WAS NOT A CHANGE OF CIRCUMSTANCES WARRANTING A REALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES TO MOTHER.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED BY FINDING THAT AN AWARD OF ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES TO FATHER WAS IN THE CHILDREN'S BEST INTEREST.

{¶ 24} In her first and second assignments of error, Mother argues the domestic relations court erred by denying her motion requesting it designate her, rather than Father, as the children's residential parent and sole legal custodian. However, just as the domestic relations court found, Mother overlooked the fact that she had the initial burden of proof in this case. *See Elam v. Elam*, 12th Dist. Butler No. CA2001-02-028, 2001 Ohio App. LEXIS 5472, *4 (Dec. 10, 2001) (the moving party has the burden of proving a change of circumstances has occurred, that the modification of custody is in the children's best interest, and that any harm to the children from a modification is outweighed by the advantages of the modification); *see also Haskett v. Haskett*, 11th Dist. Lake No. 2011-L-155, 2013-Ohio-145, ¶ 36 ("[appellant] had the burden of demonstrating a substantial change in circumstances had occurred in order to warrant consideration of the best interests of the children and a possible change in their placement").

{¶ 25} Based on the record now available, we find no error in the domestic relations court's decision finding Mother failed to meet her initial burden of proof requiring her to demonstrate that a "change of circumstances" had occurred. That is to say we find no error

with the domestic relations court's decision finding the record devoid of evidence that any change that may have occurred resulted in a material and adverse effect to the children. As noted above, in accordance with R.C. 3109.04(E)(1)(a), the domestic relations court "may modify parental rights and responsibilities if it finds that: (1) there has been a change of circumstances, (2) modification is in the best interest of the children, and (3) any harm likely to result from a change of environment is outweighed by the advantages of the change." *Zinnecker*, 133 Ohio App.3d at 383. Given the current state of the record, Mother failed to overcome even the first obstacle; proving that a "change of circumstances" had occurred.

{¶ 26} Moreover, even if Mother was able to show that a "change of circumstances" had occurred, Mother also failed to prove that a modification was in the children's best interests. "[T]here is a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest." *Hetterich v. Hetterich*, 12th Dist. Butler No. CA2000-06-122, 2001 Ohio App. LEXIS 1643, *4 (Apr. 9, 2001). To rebut that presumption Mother was required to set forth actual evidence relative to the factors applicable to a modification. *See In re M.P.*, 2d Dist. Greene No. 2011 CA 71, 2012-Ohio-2334, ¶ 16 (there must exist "actual evidence relative to the factors applicable to a modification" before a modification of a prior custody decision can be had). Again, given the current state of the record, Mother failed to rebut that presumption. Therefore, finding no error in the domestic relations court's decision, Mother's first and second assignments of error lack merit and are overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED BY FAILING TO AWARD MOTHER PARENTING TIME, OR ENFORCE HER RIGHT TO COMMUNICATION, VIOLATING HER CONSTITUTIONAL RIGHT TO PARENT HER CHILDREN.

{¶ 29} In her third assignment of error, Mother argues the domestic relations court erred by failing to award her parenting time with the children or, at the very least, enforce its orders that mandated Father allow her media contact with the children. However, while this court has no doubt that the domestic relations court would like its orders to be followed, we disagree with Mother's claim that the domestic relations court's rulings have guaranteed her the "parental death penalty." This is because, as the domestic relations court found, "[a] change in custody from Father to Mother may be advantageous to Mother but that is not the same as it being in the best interest of the children." This is particularly true here when considering Mother's history of mental health issues and other "erratic behavior." Therefore, again finding no error in the domestic relations court's decision, Mother's third assignment of error lacks merit and is overruled.

{¶ 30} Assignment of Error No. 4:

{¶ 31} THE TRIAL COURT ERRED BY FINDING THAT FATHER WAS NOT IN CONTEMPT OF COURT.

{¶ 32} In her fourth assignment of error, Mother argues the domestic relations court erred by overruling her motion for contempt. Upon reviewing the record, we find the domestic relations court erred by finding Father could not be found in contempt simply because it could not grant Mother's requested relief; specifically, that Father's motion to relocate to Nigeria with the children be rescinded and replaced with an order that the children reside with her in Ohio. The fact that the domestic relations court could not grant Mother's requested relief should not serve as an impediment to a contempt finding. To that extent, Mother's fourth assignment of error is sustained and this matter is reversed and remanded to the domestic relations court for further proceedings.

{¶ 33} Upon remand, the domestic relations court shall determine which of its orders, if any, Father should be found in contempt. The domestic relations court shall make this

determination based on the evidence that was available to it when originally ruling on Mother's motion for contempt. Thereafter, if the domestic relations court finds Mother provided sufficient evidence to necessitate an order finding Father in contempt, the domestic relations court may impose sanctions against Father that it deems appropriate under R.C. 2705.05(A). *See Castanias v. Castanias*, 12th Dist. Warren No. CA2009-04-036, 2009-Ohio-6171, ¶ 11 ("[t]he penalties imposed for civil contempt are designed to coerce compliance with a court order for the benefit of the complainant").

{¶ 34} Pursuant to R.C. 2705.05(A), upon a finding of contempt, the domestic relations court may impose any of the following penalties on a contemnor:

> (1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;
>
> (2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;
>
> (3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both.

{¶ 35} The domestic relations court "may also direct the contemnor to pay costs and the complaining party's attorneys fees." *Spickler v. Spickler*, 7th Dist. Columbiana No. 01 CO 52, 2003-Ohio-3553, ¶ 48. The domestic relations court, however, is not required to impose any sanctions against Father even after a contempt finding has been made. This is because, as noted above, R.C. 2705.05(A) is merely discretionary rather than mandatory. *Heary v. Heary*, 8th Dist. Cuyahoga No. 78201, 2001 Ohio App. LEXIS 1304, *5 (Mar. 22, 2001) (imposing sanctions under R.C. 2705.05[A] is "discretionary with the trial court"). Therefore, while making no opinion as to whether Father can be found in contempt, to the extent outlined above, Mother's fourth assignment of error is sustained.

{¶ 36} Judgment affirmed in part, reversed in part, and remanded for further

proceedings.[3]

RINGLAND, P.J., and PIPER, J., concur.

---

3. It should be noted that Nigeria is not a signatory to the Hague Convention, so any relief thereunder was unavailable and not sought.