This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, John Surdel, appeals from the judgment of the Lorain County Court of Common Pleas, Juvenile Division, which denied his motion to modify custody. We affirm.
{¶ 2} Appellant and Laurie Surdel ("Laurie") agreed to a judgment entry decree of divorce on December 11, 1996. Through this judgment entry, the trial court awarded Laurie custody of Appellant and Laurie's three minor children, Ashley, Ambrosia, and Mallory ("Surdel children"). The trial court did not award Appellant visitation with the Surdel children. Subsequently, on April 27, 1999, Appellant moved to modify custody; however, the trial court denied this motion. Appellant then perfected a timely appeal with this court. This court, on October 3, 2001, reversed and remanded the judgment entry and instructed the trial court to consider the standards outlined in R.C. 3109.04. In re Surdel
(Oct. 3, 2001), 9th Dist. No. 01CA007783, at 7-8. Upon remand, the trial court considered the standards and again denied Appellant's motion to modify custody. It is from this judgment entry that Appellant now timely appeals and raises one assignment of error, which consists of three sub-parts. For ease of review, we will jointly address the three sub-parts.
 ASSIGNMENT OF ERROR {¶ 3} "A. The trial court abused it [sic.] discretion and committed reversible error when it, to the prejudice of [Appellant], asserted and implied facts and circumstances in its [j]ournal [e]ntry, unsupported or contradicted by the record upon which those facts determined the decision of the trial court to deny [Appellant's] [m]otion to [m]odify [c]ustody.
 {¶ 4} "B. The trial court abused its discretion and committed reversible error when using the standard that Appellant * * * `failed to establish by a preponderance of the evidence' the criteria set forth in R.C. 3109.04(E)(1)(a), and in doing so denied his [m]otion for [c]hange in [c]ustody of [the Surdel children].
 {¶ 5} "C. The trial court abused its discretion and committed reversible error when it denied [Appellant's] [m]otion to [m]odify [c]ustody of [the Surdel children], without consideration of circumstances of this case, as a consequence, and without just cause denied his parental rights indefinitely."
{¶ 6} In his assignment of error, Appellant challenges the trial court's denial of his motion to modify custody. In particular, Appellant argues the following: (1) the trial court abused its discretion by denying his motion; (2) the trial court's decision was based on facts not contained in the record or contradicted by the record; and (3) the trial court erroneously disregarded the evidence he presented in support of his motion. Appellant's arguments are not well taken.
{¶ 7} A trial court has broad discretion in its determination regarding a modification of parental rights. Donovan v. Donovan (1996),110 Ohio App.3d 615, 618. Accordingly, an appellate court applies an abuse of discretion standard when reviewing a trial court's determination concerning a modification of parental rights. Masters v. Masters (1994),69 Ohio St.3d 83, 85. An abuse of discretion suggests more than an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. It implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Id.
{¶ 8} The trial court's discretion in determining parental rights must remain within the confines of the relevant statutory provisions.Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Particularly, modifying a custody decree is governed by R.C. 3109.04(E)(1)(a), which states in pertinent part:
 {¶ 9} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] the child's residential parent * * *, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 10} "(i) The residential parent agrees to a change in the residential parent[.]
 {¶ 11}" (ii) The child, with the consent of the residential parent * * *, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 12} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
{¶ 13} Applying the statutory language requires the trial court to first determine whether a change in circumstances of the child or residential parent has occurred since the prior court order. Wyss v.Wyss (1982), 3 Ohio App.3d 412, 414. A change in circumstances must be found before the trial court determines the best interest of the child.Zinnecker v. Zinnecker (1999), 133 Ohio App.3d 378, 383. "The purpose of requiring a finding of a change in circumstances is to prevent a constant relitigation of issues which have already been determined by the trial court." Id., citing Clyborn v. Clyborn (1994), 93 Ohio App.3d 192, 196. Moreover, the change in circumstances requirement promotes continuity and stability in the child's life. Jacobs v. Jacobs (1995),102 Ohio App.3d 568, 576.
{¶ 14} In the instant case, we must commence our analysis with a determination as to whether a change in circumstances existed. A "change in circumstances" is not defined by R.C. 3109.04; however, this court requires a material change in circumstances. Holcomb v. Holcomb (Sept. 26, 2001), 9th Dist. No. 01CA007795, at 6. The "change must be a change of substance, not a slight or inconsequential change." Davis v.Flickinger (1997), 77 Ohio St.3d 415, 418.
{¶ 15} This case is a real problem. Particularly, since R.C. 3109.04
outlines relevant factors that require knowledge on the part of the parent seeking termination or modification, facts must be brought to the attention of the court. However, under the facts of this case, there is no possibility of Appellant prevailing. As the children are out of Appellant's life, taken by Laurie, in violation of court orders, it is impossible for Appellant to provide the court with information. Furthermore, the trial court has had information, as to the children's location, but has not followed it up despite issuing contempt orders as against Laurie. This is ridiculous. The court must get the children back before it to determine their circumstances.
{¶ 16} The trial court determined that neither Laurie's failure to bring the Surdel children to a meeting with Appellant nor her change of residence constituted a change in circumstances. We will separately address each of these determinations.
 1. Laurie's failure to bring the Surdel children to a meeting with Appellant
{¶ 17} At the hearing regarding his motion to modify custody, Appellant contended that Laurie interfered with his visitation with the Surdel children. Specifically, Appellant stated that the trial court ordered Laurie to bring the Surdel children to the office of Dr. Sandra McPherson for a meeting and, during this meeting, Appellant was to be present. He further stated that neither Laurie nor the Surdel children came to the meeting; therefore, a second meeting was scheduled. However, Laurie and the Surdel children again did not appear.
{¶ 18} It is well-settled in Ohio that "a custodial parent's interference with visitation by a noncustodial parent may be considered as part of a `change of circumstances' which would allow for modification of custody." Holm v. Smilowitz (1992), 83 Ohio App.3d 757, 773. See, also, Beekman v. Beekman (1994), 96 Ohio App.3d 783, 792 (Harsha, P.J., concurring). Nevertheless, the record indicates that the trial court did not award Appellant any visitation rights with respect to the Surdel children in the divorce decree. Furthermore, there is nothing in the record that amends such order to provide Appellant with visitation rights. The mere court order which provided Appellant with an opportunity to visit with the Surdel children at Dr. McPherson's office does not alter the divorce decree, which denied him visitation rights, nor implement visitation rights. As such, the fact that Laurie did not bring the Surdel children to the meeting did not interfere with Appellant's visitation rights, as he did not have any right to visitation. Consequently, short of an order of continuing visitation, we find that a change in circumstances, in this regard, did not exist.
 2. Laurie's change of residence
{¶ 19} Notwithstanding our determination that a change in circumstances did not exist as to Laurie's failure to bring the Surdel children to the scheduled meetings, we must next turn to the trial court's determination that a change in circumstances did not exist as to Laurie's change of residence. We note that a change in residence of the custodial parent may be a change in circumstances that may justify modifying custody under R.C. 3109.04(E)(1)(a). Riggle v. Riggle (Sept. 26, 2001), 9th Dist. No. 01CA0012, at 7, citing Jacobs,102 Ohio App.3d at 575, fn. 2. Thus, Laurie's change in residence to an undisclosed location is a change in circumstances that warrants a further inquiry into the best interests of the Surdel children. See R.C. 3109.04(E)(1)(a).
{¶ 20} In determining the best interests of a child, the court is guided by a nonexclusive set of factors outlined in R.C. 3109.04(F)(1). Specifically, R.C. 3109.04 (F)(1) provides:
 {¶ 21} "In determining the best interest of a child pursuant to this section, * * * the court shall consider all relevant factors, including, but not limited to:
 {¶ 22} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 23} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 24} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 25} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 26} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 27} "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 {¶ 28} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 29} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of [R.C. 2919.25] involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused or a neglected child;
 {¶ 30} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 {¶ 31} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
{¶ 32} At the hearing, Sherry Madden ("Sherry") testified that Laurie married her ex-husband, Kevin Madden ("Kevin"). She further testified that Laurie and Kevin reside with the Surdel children and Marsha Madden and Kristin Madden, Kevin and Sherry's minor children. Sherry asserted that all five of the children had been enrolled in several different schools, but were not currently attending any school. She stated that Laurie attempted to alienate her from Marsha and Kristin. Finally, Sherry testified that she does not think that the current living situation is in the Surdel children's best interest.
{¶ 33} Next, Appellant testified that he does not know where the Surdel children are presently living. He explained that he was scheduled to meet with the Surdel children; however, Laurie did not come to the meeting with the children. Appellant articulated that he believes the Surdel children may be harmed living with Laurie because she considers the children "possessions." Appellant acknowledged that "[the court] could not give [him] the children now because they have * * * been disoriented from [him]." He further stated that "[t]hey probably need therapy to get [him] back into their lives."
{¶ 34} Dr. Sandra McPherson testified that she had observed Laurie and her observations revealed that Laurie had a belief system that Appellant had sexually abused the Surdel children. Dr. McPherson also concluded that the Surdel children should have visitation with Appellant, and noted that a meeting was scheduled, but neither Laurie nor the Surdel children came to the meeting or the re-scheduled meeting. Dr. McPherson believes that Laurie needs to teach lawful behavior to the Surdel children, and her actions in this case have not been beneficial to the children. Lastly, Dr. McPherson stated that she had not conducted an evaluation as to which parent is in a better position to provide custodial care for the Surdel children.
{¶ 35} The trial court's decision indicates that it considered all of the factors enumerated in R.C. 3104.09(F)(1)(a) when evaluating the evidence presented and in its findings that (1) it was not in the Surdel children's best interest to modify the prior custody order and (2) the harm likely to be caused by the change in environment was not outweighed by the advantages of the requested change of environment. Upon a thorough review of the record, we cannot say that the trial court acted in an unreasonable, arbitrary, or unconscionable manner in reaching its determination. Therefore, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to modify custody and, accordingly, overrule Appellant's assignment of error.
{¶ 36} Appellant's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
BATCHELDER, J. CONCURS